UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

    Plaintiff,                 Case Number: 2:19-cv-10391
                                        HON. GEORGE CARAM STEEH

    v.

KENNETH MCKEE, ET AL.,

    Defendants.
_____/

## ORDER OF SUMMARY DISMISSAL

**I.    Introduction**

Michigan state prisoner Joel Carter has filed a *pro se* complaint under 42 U.S.C. § 1983. He names five defendants. Plaintiff claims violations of his right to free speech and access to the courts; that he was retaliated against for exercise of his First Amendment rights; that he was denied sufficient medical information; that defendants violated his attorney-client privilege; and mail censorship violates the Fourteenth Amendment. He seeks injunctive and monetary relief. The Court dismisses Plaintiff's complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

**II.     Standard**

Plaintiff has been granted leave to proceed without prepayment of the filing fee for this action due to his indigence. Under the Prison Litigation Reform Act ("PLRA"), the Court is required to *sua sponte* dismiss an *in forma pauperis* complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual allegations, *Twombly*, 550 U.S. at 555, it does require more than the bare assertion of legal conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

To state a federal civil rights claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A *pro se* civil rights complaint is to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. Factual Allegations

Plaintiff's claims arise from events occurring during his incarceration at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff alleges that, on December 22, 2014, property room officer Lewis confiscated Plaintiff's volume of the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). Officer Lewis mistakenly believed that the DSM-IV belonged to another inmate and issued Plaintiff a misconduct ticket for possession of contraband.

A misconduct hearing was held on December 26, 2014. Plaintiff apparently proved that he owned the DSM-IV, but Defendant Kindinger

nevertheless upheld the confiscation of the book because it was obtained or sent from an unauthorized source.

On February 2, 2015, Defendant Evers, a resident unit manager, issued a Notice of Intent to Conduct an Administrative Hearing, alleging that the DSM-IV posed a security concern and requesting that it be placed on the Michigan Department of Corrections' (MDOC) facility-wide restricted publications list. On February 4, 2015, Defendant Kindinger held that DSM-IV posed a security threat because a prisoner could utilize it to feign a mental illness to obtain a transfer.

On February 4, 2015, Melissa Salinas and Andrew Dalack, attorneys with the University of Michigan Law School, informed Defendant Klee that they had provided Plaintiff with the DSM-IV. They requested that, if prison officials would not return the book to Plaintiff, the book be returned to them. According to Plaintiff, instead of returning the book, defendants destroyed it.

On February 6, 2015, Defendant McRoberts informed Plaintiff the book would not be returned to him, and Defendant Klee requested the book be placed on the MDOC's restricted publications list. In April 2015, Defendant McKee issued a state-wide ban on the DSM-IV, by placing it on MDOC'S restricted publications list.

Plaintiff alleges that denying him access to the DSM-IV results in a denial of his right of access to the courts. He claims that he has been diagnosed with multiple, serious psychiatric illnesses. He has filed several lawsuits against MDOC officials claiming the denial of appropriate mental health treatment. Plaintiff argues these lawsuits make it necessary for him to have access to the DSM-IV and that denying access to the DSM-IV violates his right to sufficient medical information.

Plaintiff alleges defendants destroyed his DSM-IV in retaliation for Plaintiff filing civil rights complaints and in violation of the attorney-client privilege. He also claims that the MDOC policy directive governing legal mail is unconstitutional.

## III. Discussion

### A. First Amendment Claims

Petitioner argues that defendants violated his rights under the First Amendment by confiscating his volume of the DSM-IV, denying him access to the courts, and retaliating against him for exercising his First Amendment rights.

Prisoners retain First Amendment rights while incarcerated, but they retain only "those First Amendment rights ... 'not inconsistent with [their] status as ... prisoner[s] or with the legitimate penological objectives of the

corrections system.'" *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  A prison regulation which restricts an inmate's access to publications is constitutionally valid if it is reasonably related to a legitimate penological interest.  *Bell v. Wolfish*, 441 U.S. 520, 550-552 (1978).  "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  Further, "[w]here a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities."  *Id*. at 85.

To determine whether a policy is reasonably related to a legitimate penological interest, the Court considers these factors: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources

generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Thornburgh v. Abbott*, 490 U.S. 401, 414-18 (1989) (citing *Turner*, 482 U.S. 78, 88-91 (1987)).

The MDOC articulated a rational connection between the policy banning the DSM-IV and legitimate penological interests. According to Plaintiff, the MDOC sought to lessen the possibility of informing and encouraging malingering by inmates, who might utilize the DSM-IV to attempt to gain transfers to more desirable facilities. The issue is "not whether the prohibited materials have in fact caused problems or are even 'likely' to cause problems, but whether a reasonable official might think that the policy advances these interests." *Thompson v. Campbell,* 81 F. App'x 563, 567-68 (6th Cir. 2003) (citing *Thornburgh*, 490 U.S. at 417). Here, the desire to maintain order, prevent unnecessary transfers, and prevent malingering serves a legitimate penological interest. Second, Plaintiff's express desire to pursue legal claims is not dependent upon access to the DSM-IV as he states he already has been diagnosed with mental disorders and challenges the denial of mental health treatment. Further, the restriction placed upon the DSM-IV does not limit Plaintiff's access to caselaw or other materials related to an alleged denial of medical care. Third, a policy permitting prisoners to receive this publication could have a

significant impact on the allocation of prison resources if it increased the incidence of prisoners pretending to have mental illnesses. Finally, this restriction is not an "'exaggerated response' to the problem at hand." *Thornburgh*, 490 U.S. at 418.

Next, Plaintiff claims confiscating his DSM-IV violated his right of access to the courts. Prisoners, including indigent prisoners, have a constitutional right of access to the courts which the states have an affirmative duty to protect. *See Bounds v. Smith*, 430 U.S. 817, 821-25 (1977). A prisoner's right of access to the courts is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). To state a violation of this right, a prisoner must allege that a prison official's conduct caused him an actual injury, such as frustration of a particular legal claim. *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

In this case, although Plaintiff asserts some vague allegations of prejudice, he fails to allege facts sufficient to show prejudice, i.e., that any

of his constitutionally-guaranteed legal proceedings have been compromised by the defendants' actions. He has thus failed to state a claim that his constitutional right of access to the courts has been denied. This claim must be dismissed.

Finally, Plaintiff alleges defendants banned the DSM-IV in retaliation for his filing civil rights actions, receiving the DSM-IV, and seeking medical information. Government officials may not retaliate against someone for engaging in constitutionally-protected conduct. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The Sixth Circuit has concluded that a prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus*, 175 F.3d at 388. A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two, i.e., the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.* at 394. The plaintiff bears the burden of proof on all three elements. *See Mt. Healthy*, 429 U.S. at 287; *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Plaintiff has not satisfied his burden. He merely asserts, in conclusory fashion, that the defendants have retaliated against him. He does not offer facts to support this assertion. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to state a claim upon which relief may be granted. *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing cases).

**B.     Due Process Right to Sufficient Medical Information**

Petitioner also claims that confiscating his DSM-IV violated his due process right to sufficient medical information.

Prisoners have a protectable liberty interest to refuse medical treatment. *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996) (citing *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990)). Some courts have found a related right "to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment." *See e.g., White v. Napoleon*, 897 F.2d 103, 113 (3rd Cir. 1990). Plaintiff asserts a conclusory allegation that he seeks information from the DSM-IV to make informed decisions about his treatment, but points to no specific decision to accept or reject proposed treatment impacted by the absence of the DSM-IV.

This claim is denied.

### C. Attorney-Client Privilege

Plaintiff argues that the confiscation and destruction of the DSM-IV interfered with his legal mail and violated the attorney-client privilege.

Incoming mail poses a greater threat to prison order and security than outgoing mail. *See Turner*, 482 U.S. 78. When incoming mail is "legal mail," the Sixth Circuit has recognized "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).

Plaintiff's claim, however, does not concern the opening of his legal mail. While the DSM-IV may have been sent to him by attorneys, Plaintiff does not allege that prison officials opened his legal mail. Prison officials confiscated a publication determined to be a restricted publication. The publication itself did not offer legal advice, disclose a confidential attorney-client communication or contemplate a litigation strategy. That this publication happened to be sent to him by attorneys does not implicate his right to receive legal mail. This claim is denied.

### D. MDOC Policy Directive 05.03.118

Finally, Petitioner argues that MDOC Policy Directive 05.03.118 is unconstitutional because it does not provide adequate procedural safeguards regarding the screening of mail.

Policy Directive 05.03.118 sets forth MDOC's guidelines for prisoners' mail rights. Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. MDOC Policy Directive 05.03.118 NN. The policy also provides that if staff believes that mail to a prisoner is in violation of these guidelines, a hearing shall be held promptly to determine whether the mail meets the criteria for an excluded item or publication. *See* Policy Directive 05.03.118.VV-ZZ. If the hearing upholds the exclusion and the excluded item is a newspaper, magazine, catalog, book or similar publication, the institution shall submit a copy of the hearing report and a copy of the publication to the CFA Deputy Director for final determination. If the Deputy Director agrees with the results of the hearing, the publication will be placed on the Department's Restricted Publication List. *See* Policy Directive 05.03.118.CCC. Plaintiff's summary of the procedures followed to place the DSM-IV on the restricted publications list shows that the

MDOC followed the published policy directives.

Moreover, Plaintiff's claim that he was deprived of his property without due process is not properly filed under § 1983. The negligent or intentional deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (ruling that negligence does not amount to a "deprivation" implicating due process). To maintain a §1983 action "claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiff has not alleged or shown that Michigan's judicial remedies are inadequate or that it would be futile to present his claim in the Michigan state courts. Plaintiff has an adequate remedy in the state courts. *See Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995).

## IV.    Order

Accordingly, IT IS ORDERED that the complaint is DISMISSED**.**

The Court finds an appeal in this case would be frivolous and not taken in good faith. 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*,

369 U.S. 438, 445 (1962). Therefore, Plaintiff is not certified to pursue an appeal from this judgment *in forma pauperis*. 28 U.S.C. § 1915(a)(3). Nevertheless, should Plaintiff decide to file a notice of appeal, he may seek leave from the Court of Appeals to proceed on appeal *in forma pauperis. See* Fed. R. Civ. P. 24(a)(5).

Dated: April 2, 2019

                        s/George Caram Steeh
                        GEORGE CARAM STEEH
                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 2, 2019, by electronic and/or ordinary mail and also on Joel Carter #410324, Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221.

s/Barbara Radke
Deputy Clerk